IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

VINCENT ALLEN, :
                   Petitioner, :
v. : Civ. Act. No. 11-779-LPS
PHILIP MORGAN, Warden, and JOSEPH :
R. BIDEN, III, Attorney General of the :
State of Delaware, :
                   Respondents. :

---

Vincent Allen. *Pro se* Petitioner.

Maria T. Knoll, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Attorney for Respondents.

---

**MEMORANDUM OPINION**

September 14, 2015
Wilmington, Delaware

*[signature]*

STARK, District Judge:

Pending before the Court is an Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 ("Petition") filed by Petitioner Vincent Allen ("Petitioner"). (D.I. 1) For the reasons discussed, the Court will dismiss the Petition and deny the relief requested.

I.  BACKGROUND

In 1984, Petitioner was convicted, *inter alia*, of two counts of reckless endangering in the first degree.[1] (D.I. 13 at 1) He was sentenced to a total of ten years in prison, to begin after he finished serving another sentence. (*Id.*) Subsequent to his 1984 conviction, Petitioner incurred new charges; was paroled and then had that parole revoked; and has been denied early parole. (*Id.* at 1-2) In March 2010, while Petitioner was serving parole at Level IV in the Crest Program and/or on Work Release, a Violation of Parole Report was filed alleging that Petitioner had violated three conditions of his parole. (D.I. 13 at 43-48) On August 10, 2010, after holding a violation hearing and finding that Petitioner had violated three parole conditions, the Board of Parole ("Board") revoked his parole and advised Petitioner that he was to serve the remaining balance of his sentence and lose all previously earned good-time credits. (D.I. 13 at 41) The Board also informed Petitioner that he must participate in anger management programs and that he could reapply for parole in August 2013. (*Id.*)

Petitioner filed a petition for a writ of habeas corpus in the Superior Court on October 18, 2010, which the Superior Court denied. (D.I. 13 at 24) In December 2010, Petitioner filed a request

---

[1] In 1984, Petitioner was also convicted of two counts of third degree burglary; two counts of reckless endangering; two counts of conspiracy; five counts of theft less than $500; three counts of second degree forgery; one count of second degree robbery; one count of third degree assault; one count of menacing; and violation of parole. (D.I. 13 at 46) For these convictions, Petitioner was sentenced to total of thirty-three years, nine months, and eleven days of incarceration. *Id.*

1

for early parole consideration. Based upon Petitioner's previous failure while under community supervision, the Board denied his request on November 2, 2011. (D.I. 13 at 42)

Petitioner timely filed the instant Petition. (D.I. 1) The State filed an Answer in opposition, contending that the claims should be denied as unexhausted or meritless. (D.I. 13)

## II. DISCUSSION

Petitioner asserts the following two claims for relief in his Petition: (1) the Board violated his due process rights by taking five months to conduct the violation of parole hearing that resulted in parole revocation, and also by improperly and completely revoking his parole; and (2) state budget laws for the Board had an adverse effect on him and, as a result, violated the *Ex Post Facto* Clause.[2]

### A. Claim One: Due Process Violations

#### 1. Procedural due process

It is well-settled that "the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocation." *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972). Nevertheless, minimum procedural due process procedures must be followed during the arrest and initial decision to detain the parolee, as well as during the final decision on parole revocation. *Id.* at 485-89.

In his first due process allegation, Petitioner contends that the five month "delay" between his Violation Report and final revocation hearing violated his due process rights. The Court liberally construes this claim as alleging a violation of Petitioner's procedural due process rights. In order to establish that the five month interval between his Violation Report and his revocation hearing

---

[2]Regardless of whether these claims may be unexhausted, the Court will deny them on the merits pursuant to 28 U.S.C. § 2254(b)(2).

2

violated his procedural due process rights, Petitioner must demonstrate that the delay was both unreasonable and prejudicial. *See Maslauskas v. U.S. Bd. Of Parole*, 639 F.2d 935, 938 (3d Cir. 1980).

With respect to the reasonableness of the delay, the Supreme Court has held that a delay of two months in holding a parole revocation hearing was not unreasonable. *See Morrissey*, 408 U.S. at 487-90. Courts in the Third Circuit have found that delays of over four or five months are not *per se* unreasonable, but that a delay of nine months was unreasonable. *See Simmons v. Colleran*, 2005 WL 2783001, at *3 (E.D. Pa. Oct. 24, 2005) (delay of four months and twenty days not unreasonable); *U.S. ex rel. Burgess v. Lindsey*, 395 F. Supp. 404, 410-11 (E.D. Pa. 1975) (delay of five months reasonable but delay of nine months unreasonable). In light of these authorities, the Court does not conclude that the five month delay was *per* se unreasonable..

Petitioner has also failed to demonstrate that he was prejudiced by the five month delay. Although he contends that the delay caused the loss of witnesses that could have supported his defense, Petitioner does not describe the efforts he made to secure these witnesses, does not identify the witnesses, and does not describe the witnesses' potential testimony. *See Maslauskas*, 639 F.2d at 938. Petitioner also does not allege that he is actually innocent or that he did not violate his parole in the manner determined by the Board. As such, the Court does not conclude that Petitioner has demonstrated prejudice sufficient to establish a procedural due process violation. Given Petitioner's failure to establish either element required for finding a procedural due process violation in the context of parole revocations, the Court will deny this portion of Claim One as meritless.

### 2. Substantive due process

Petitioner also contends that the Board of Parole violated his due process rights by completely revoking his parole on the basis of technical parole violations, because his technical

violations only warranted a partial revocation of his parole. The Court liberally construes this argument as alleging that the Board violated Petitioner's substantive due process rights.

It is well-settled that "[t]ere is no right under the Federal Constitution to be conditionally released before the expiration of a valid sentence, and the States are under no duty to offer parole to their prisoners." *Swarthout v. Cooke*, 562 U.S. 216, 131 S.Ct. 859, 862 (2011). Similarly, the Delaware parole statute does not create a liberty interest in being released on parole. *See Eskridge v. Casson*, 471 F. Supp. 98, 101 (D. Del. 1979). However, according to Third Circuit precedent, once a state institutes a parole system, "all prisoners have a liberty interest flowing directly from the due process clause in not being denied parole for arbitrary or constitutionally impermissible reasons." *Block v. Potter*, 631 F.2d 233, 236 (3d Cir. 1980).[3]

"[T]he Due Process Clause contains a substantive component that bars certain arbitrary, wrongful governmental actions regardless of the fairness of the procedures used to implement them. *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (internal quotation marks omitted). In order to prevail on a substantive due process claim regarding a parole board's decision, a petitioner must establish that the challenged action shocks the conscience. *See Evans v. Secretary, Pa. Dep't of Corr.*, 645 F.3d 650, 659 (3d Cir. 2011). The "official conduct most likely to rise to the conscience-shocking level is the conduct intended to injure in some way unjustifiable by any government test." *Chavez v. Martinez*, 538 U.S. 760, 775 (2003). For instance, a Board of Parole may not arbitrarily deny parole on the basis of impermissible criteria such as race, religion, or the exercise of free speech rights, or on criteria with no rational relationship to the purpose of parole. *See Block*, 631 F.2d at 236-37.

---

[3]Although "the vitality of *Block* is questionable, it must be followed until overturned." *Walls v. Att'y Gen. of Pa.*, 2007 WL 4190790, at *3 n.4 (W.D. Pa. Nov. 26, 2007) (questioning *Block*'s holding that substantive due process can be violated despite absence of liberty interest).

Nevertheless, the Third Circuit has stressed that "federal courts are not authorized by the due process clause to second-guess parole boards and the requirements of substantive due process are met if there is some basis for the challenged decision." *Coady v. Vaughn*, 251 F.3d 480, 487 (3d Cir. 2001).

After reviewing Petitioner's argument that the Board violated his substantive due process rights by completely revoking his parole on the basis of "technical violations," the Court concludes that Petitioner is not entitled to relief. Petitioner has not provided, and the Court has not found, any authority for Petitioner's contention that his "technical violations" only warranted a partial revocation of his parole. In turn, Petitioner has not shown that any of the factors considered by the Board in revoking his parole shock the conscience, or that such factors constitute behavior intended to injure Petitioner in a way that is not justified by any legitimate government interest. *See McGinnis v. Royster*, 410 U.S. 263, 277 (1973) (stating it is "legitimate desire of the state legislature to afford state prison officials an adequate opportunity to evaluate both an inmate's conduct and his rehabilitative progress before he is eligible for parole."); *Prever v. Barone*, 428 F. App'x 218, 220 (3d Cir. 2011) (DOC's negative recommendation is legitimate penological concern); *Gordon v. Wenerowicz*, 2011 WL 5509538, at *4 (M.D.Pa. Nov. 10, 2011) (denying parole because petitioner poses risk to the community is not "conscience shocking.").

Here, for instance, the Board's August 11, 2010 Revocation Letter asserts that Petitioner was found guilty of violating the following conditions of his parole:

> VC3: You must abide by all the rules and regulations of the county community correction center and/or the residential treatment programs as described in the orientation manual.
>
> VC4: You will follow any special rules/conditions imposed at anytime by the Court, Parole Board, Department of Correction, halfway house staff and the residential treatment program.

> VC23: You must obey any special conditions imposed by your officer, the Board, or the Court including evaluation and completion of treatment for substance abuse, psychiatric/psychological, community service/work program, and no contact with the victim.

(D.I. 13 at 41) According to Petitioner's March 2010 Violation Report, Petitioner violated his conditions of parole by failing to comply with basic rules and policies of the center, committing theft, lying to staff members, refusing to participate in Crest House group treatment, showing disrespect toward community staff and residents, and engaging in defiant and disorderly behavior. (D.I. 13 at 44-45)

Pursuant to Del. Code Ann. tit 11, § 4347(c) (West 2010), "parole may be granted when in the opinion of the Board there is reasonable probability that the person can be released without detriment to the community or to the person, and where, in the Board's opinion, parole supervision would be in the best interest of society and an aid to rehabilitation of the offender as a law-abiding citizen." Additionally, a "person shall be placed on parole only when the Board believes that the person is able and willing to fulfill the obligations of a law-abiding citizen." *Id.* In turn, pursuant to Del. Code ann. tit. 11, § 4352(d) (West 2010), if "the violation is established by the hearing, the Board may continue or revoke the parole or conditional release, or enter such other order as it may seem fit."

Here, the Board's consideration of Petitioner's repetitive behavioral issues and rule violations was clearly appropriate under state law, and did not violate any Constitutional mandates. None of the reasons in the Board's August 11, 2010 Revocation Letter or the March 2010 Violation Report indicate that the Board relied upon any impermissible criterion such as race or religion in revoking his parole, or that the Board weighed Petitioner's parole suitability factors in an arbitrary manner. Rather, the record demonstrates that there was "some basis" for the Board's decision to revoke Petitioner's parole, and nothing in the Board's decision shocks the conscience or indicates that it was

6

deliberately indifferent to the facts of Petitioner's situation. Thus, the Court will deny the second portion of Claim Two as the Board did not violate Petitioner's substantive due process rights by totally revoking Petitioner's parole.

### B. Claim Two: *Ex Post Facto* Clause Violation

In Claim Two, Petitioner contends that Delaware's budget bill, House Bill 190, which was signed into law by Delaware's Governor on July 1, 2011, violates the *Ex Post Facto* Clause. For the first time since Petitioner's 1983 conviction, House Bill 190 provides no funding for the Parole Board. (D.I. 3 at 11) Petitioner argues that "this change in Delaware (pursuant to the budget bill) and/or policy of not funding its operations, violates the Ex Post Facto Clause, as it disadvantages [Petitioner] who is directly affected by it." *Id.* Petitioner asserts that the "Parole Board no longer has resources, including paid support staff, to carry out its functions as defined by statute." *Id.* Petitioner supports this argument by noting that the Board of Parole had not scheduled a hearing or rendered a decision eight months after his most recent December 22, 2010 application for early parole. *Id.*

This argument is unavailing. It is well-settled that a petitioner can only obtain habeas corpus relief for an alleged violation of the *Ex Post Facto* Clause by demonstrating "both a retroactive change in law or policy and that this change caused individual disadvantage by creating a significant risk of increasing his punishment." *Richardson v. Pa. Bd. of Prob. & Parole*, 423 F.3d 282, 284 (3d Cir. 2005). Petitioner has not satisfied the second prong of this test. The focus of an *ex post facto* inquiry is not whether a legislative change produces some ambiguous disadvantage or affects a prisoner's opportunity to take advantage of provisions of early release; rather, the focus is whether the change alters the definition of criminal conduct or increases the punishable penalty for a crime. *See Calif. Dep't. of Corr. v. Morales*, 514 U.S. 499, 504 (1995). Here, Petitioner's generalized complaint that the

7

decrease in funding effectuated by House Bill 190 eliminated the Board's resources fails to establish an *ex post facto* violation because a decrease in funding does not necessarily demonstrate an "individualized disadvantage" for Petitioner. Significantly, the Board's August 2010 Letter of Revocation told Petitioner not to reapply for parole until August 2013, yet Petitioner ignored that statement and applied for early parole in December 2010. (D.I. 13 at 41) In turn, the Board denied his request for early parole on November 2, 2011. (D.I. 13 at 42) For all of these reasons, the Court concludes that Petitioner has not established an *ex post facto* violation, and will deny Claim Two as meritless.

## III. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. Rule 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that the Petition lacks merit. The Court is persuaded that reasonable jurists would not find these conclusions to be debatable. Therefore, the Court declines to issue a certificate of appealability.

## IV. CONCLUSION

For the reasons discussed, Petitioner's Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 will be denied. (D.I. 1) An appropriate Order will be entered.